John Cassidy, Plaintiff                                    Case #_____

v.

Maura Healey, Attorney General For the State of Massachusetts          Jury Trial - No

## APPENDIX

1. Plaintiff's Hunter's Education Course from 2000 and Massachusetts's Safety Courses
2. Plaintiff's Texas State Notary Commission
3. MGL Ch 140 s 131M
4. MGL Ch 269 s 10(m)
5. MGL Ch 269 s 10 (h)
6. MGL Ch 140 s 121
7. MGL Ch 269 s 10(a)
8. Plaintiff's Law School Loan Ledger
9. Plaintiff's (3) pay stubs

John Cassidy, Plaintiff                                           Case #_____

v.

Maura Healey, Attorney General For the State of Massachusetts                    Jury Trial - No

Plaintiff's Hunter's Education Course from 2000
and Massachusetts's Safety Courses



IN ACCEPTING THIS CERTIFICATE I AGREE TO CONDUCT
MYSELF AS A TRUE SPORTSMAN. I WILL BE A SAFE
HUNTER AND ALWAYS:

1. POINT THE MUZZLE IN A SAFE DIRECTION.
2. TREAT EVERY GUN AS IF IT WERE LOADED.
3. BE CERTAIN OF MY TARGET AND BACKSTOP BEFORE
   SHOOTING.
4. PRACTICE COURTESY AND SELF CONTROL.
5. OBEY THE LAW.
6. REMEMBER THAT ALCOHOL AND HUNTING DON'T MIX.

SIGNATURE _____   CARD MUST BE SIGNED ABOVE

Ch 140 s 131P (a)

**HUNTER EDUCATION CERTIFICATE**

THE PERSON NAMED BELOW HAS SUCCESSFULLY COMPLETED THE TEXAS PARKS
AND WILDLIFE DEPARTMENT'S HUNTER EDUCATION COURSE, WHICH MEETS THE
INTERNATIONAL HUNTER EDUCATION ASSOCIATION RECOMMENDED STANDARDS.

| CERTIFICATION DATE | STUDENT NO. | BIRTHDATE |
|---|---|---|
| 09/24/2000 | 634231 | 12/10/1984 |

JOHNIE CASSIDY
2727 SYNOTT RD #514
HOUSTON TX 77082

INSTRUCTOR NO. U04496

EXECUTIVE DIRECTOR



# The Commonwealth of Massachusetts
# Department of State Police

## BASIC FIREARMS SAFETY CERTIFICATE

The following named individual has successfully completed a Basic Firearms Safety Course as prescribed by G.L. c. 140, § 131P and 515 CMR 3.00.

John Cassidy
(Name)

12/10/1984
(Date of Birth)

JAMES F. DOOLEY
(Instructor's Name)

NRA HOME SAFETY
(Certified Course Title)

LTC-007
(Course Certification Number)

BFS 002153
(Instructor's Certification Number)

YES
(Valid for LTC)

( Valid for FID Only)

I hereby certify the person named in this certificate has successfully completed a Basic Firearms Safety Course as prescribed by G.L. c. 140, § 131P and 515 CMR 3.00.

Instructor's Signature James F Dooley   Date Course Completed   08/01/2011

MASSACHUSETTS
STATE
POLICE



**The National Rifle Association of America**

# THE NATIONAL RIFLE ASSOCIATION OF AMERICA

Awards this certificate to

John Cassidy

for successful completion of the

## NRA
## HOME FIREARM SAFETY COURSE
### (A NON-SHOOTING COURSE)

_Middletoro, Mass_
Issued at

_08/01/2011_
Date

_James F Dorley_
NRA Certified Instructor

_Edward J Land Jr_
NRA Secretary

NRA ID # 144185 386



NR40830ES 26

John Cassidy, Plaintiff                                                    Case #_____
v.
Maura Healey, Attorney General For the State of Massachusetts                    Jury Trial - No

Plaintiff's Texas State Notary Commission

## IN THE NAME AND BY THE AUTHORITY OF
### THE STATE OF TEXAS.

## Notary Public Commission

HEREAS

TO ALL TO WHOM THESE PRESENTS SHALL COME - GREETINGS:

John Cassidy
15926 Cottage Ivy Circle
Tomball Tx 77377

| MO | DAY |
|----|-----|

08-03-201

as been appointed by the Secretary of State of Texas a Notary Public in the State of Texas. Now, therefore, the above named person hereby commissioned a Notary Public for the State of Texas under the laws of the State of Texas with all rights, privileges and emoluments ppertaining to said office.

Hope Andrade, Secretary of State

TERM OF APPOINTMENT
12907633-

**EXPIRES** 08-03-2016

Rick Perry
Rick Perry, Governor of Texas

A NOTARY PUBLIC, BEFORE ENTERING ON THE DUTIES OF OFFICE SHALL TAKE THE OFFICIAL OATH OF OFFICE ON THE REVERSE SIDE OF THIS FORM. THE OATH SHALL BE SIGNED AND SWORN TO OR AFFIRMED BY THE NOTARY PUBLIC IN THE PRESENCE OF A NOTARY PUBLIC OR OTHER PERSON AUTHORIZED TO ADMINISTER OATHS IN THIS STATE. **A NOTARY PUBLIC CANNOT EXECUTE HIS OR HER OWN OATH OF OFFICE.**

THE COMMISSION CERTIFICATE AND EXECUTED OATH OF OFFICE IS YOUR OFFICIAL RECORD AND IS TO BE RETAINED BY YOU.

EDUCATIONAL MATERIALS ARE ATTACHED

STATE OF TEXAS

COUNTY OF ___Harris___

### NOTARY PUBLIC OATH OF OFFICE

I, __John Cassidy__ , do solemnly swear (or affirm), that I will faithfully execute the duties of the office of notary public of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and this state, so help me God.

X _____

Sworn to and subscribed before me this __13th__ day of __August__ 20 __12__

KAREN AKIENS
MY COMMISSION EXPIRES
November 17, 2015

Notary Public Signature

**THE REVERSE SIDE OF THIS PAGE CONTAINS YOUR OFFICIAL NOTARY PUBLIC COMMISSION.**

John Cassidy, Plaintiff

Case #_____

v.

Maura Healey, Attorney General For the State of Massachusetts

Jury Trial - No

MGL Ch 140 s 131M
MGL Ch 269 s 10(m)
MGL Ch 269 s 10 (h)
MGL Ch 140 s 121
MGL Ch 269 s 10(a)

### Historical and Statutory Notes

St.1998, c. 180, § 47, was approved July 23, 1998.

St.1999, c. 1, § 4, an emergency act, approved March 5, 1999, added subsec. (f).

## § 131M.  Assault weapon or large capacity feeding device not lawfully possessed on September 13, 1994; sale, transfer or possession; punishment

No person shall sell, offer for sale, transfer or possess an assault weapon or a large capacity feeding device that was not otherwise lawfully possessed on September 13, 1994.  Whoever not being licensed under the provisions of section 122 violates the provisions of this section shall be punished, for a first offense, by a fine of not less than $1,000 nor more than $10,000 or by imprisonment for not less than one year nor more than ten years, or by both such fine and imprisonment, and for a second offense, by a fine of not less than $5,000 nor more than $15,000 or by imprisonment for not less than five years nor more than 15 years, or by both such fine and imprisonment.

The provisions of this section shall not apply to: (i) the possession by a law enforcement officer for purposes of law enforcement; or (ii) the possession by an individual who is retired from service with a law enforcement agency and is not otherwise prohibited from receiving such a weapon or feeding device from such agency upon retirement.

Added by St.1998, c. 180, § 47.

### Historical and Statutory Notes

St.1998, c. 180, § 47, was approved July 23, 1998.

## § 131N.  Covert weapons; sale, transfer or possession; punishment

No person shall sell, offer for sale, transfer or possess any weapon, capable of discharging a bullet or shot, that is: (i) constructed in a shape that does not resemble a handgun, short-barreled rifle or short-barreled shotgun including, but not limited to, covert weapons that resemble key-chains, pens, cigarette-lighters or cigarette-packages; or (ii) not detectable as a weapon or potential weapon by x-ray machines commonly used at airports or walk-through metal detectors.  Whoever violates the provisions of this section shall be punished, for a first offense, by a fine of not less than $1,000 nor more than $10,000 or by imprisonment for not less than one year nor more than ten years, or by both such fine and imprisonment, and for a second offense, by a fine of not less than $5,000 nor more than $15,000 or by imprisonment for not less than five years nor more than 15 years, or by both such fine and imprisonment.

Added by St.1998, c. 180, § 47.

### Historical and Statutory Notes

St.1998, c. 180, § 47, was approved July 23, 1998.

314

this paragraph, "firearm" shall mean any pistol, revolver, rifle or smoothbore arm from which a shot, bullet or pellet can be discharged by whatever means.

Any officer in charge of an elementary or secondary school, college or university or any faculty member or administrative officer of an elementary or secondary school, college or university failing to report violations of this paragraph shall be guilty of a misdemeanor and punished by a fine of not more than five hundred dollars.

*[There is no paragraph (k).]*

(*l*) The provisions of this section shall be fully applicable to any person proceeded against under section seventy-five of chapter one hundred and nineteen and convicted under section eighty-three of chapter one hundred and nineteen, provided, however, that nothing contained in this section shall impair, impede, or affect the power granted any court by chapter one hundred and nineteen to adjudicate a person a delinquent child, including the power so granted under section eighty-three of said chapter one hundred and nineteen.

(m) Notwithstanding the provisions of paragraph (a) or (h), any person not exempted by statute who knowingly has in his possession, or knowingly has under his control in a vehicle, a large capacity weapon or large capacity feeding device therefor who does not possess a valid Class A or Class B license to carry firearms issued under section 131 or 131F of chapter 140, except as permitted or otherwise provided under this section or chapter 140, shall be punished by imprisonment in a state prison for not less than two and one-half years nor more than ten years. The possession of a valid firearm identification card issued under section 129B shall not be a defense for a violation of this subsection; provided, however, that any such person charged with violating this paragraph and holding a valid firearm identification card shall not be subject to any mandatory minimum sentence imposed by this paragraph. The sentence imposed upon such person shall not be reduced to less than one year, nor suspended, nor shall any person convicted under this subsection be eligible for probation, parole, furlough, work release or receive any deduction from his sentence for good conduct until he shall have served such minimum term of such sentence; provided, however, that the commissioner of correction may, on the recommendation of the warden, superintendent or other person in charge of a correctional institution or the administrator of a county correctional institution, grant to such offender a temporary release in the custody of an officer of such institution for the following purposes only: (i) to attend the funeral of a spouse or next of kin; (ii) to visit a critically ill close relative or spouse; or (iii) to obtain emergency medical services unavailable at such institution. Prosecutions commenced under this subsection shall neither be continued without a finding nor placed on file. The provisions of section 87 of chapter 276 relative to the power of the court to place certain offenders on probation shall not apply to any person 17 years of age or over charged with a violation of this section.

le or smoothbore
whatever means.

hool, college or
an elementary or
iolations of this
fine of not more

: to any person
ıe hundred and
ıne hundred and
ection shall im-
:er one hundred
ng the power so
d and nineteen.

any person not
knowingly has
large capacity
Class B license
140, except as
:r 140, shall be
vo and one-half
m identification
violation of this
l with violating
-d shall not be
ıaragraph. The
: than one year,
:tion be eligible
uction from his
ıimum term of
:ection may, on
:rson in charge
ty correctional
custody of an
ı to attend the
ose relative or
.ilable at such
ıall neither be
ıf section 87 of
ı offenders on
:harged with a

The provisions of this paragraph shall not apply to the possession of a large capacity weapon or large capacity feeding device by (i) any officer, agent or employee of the commonwealth or any other state or the United States, including any federal, state or local law enforcement personnel; (ii) any member of the military or other service of any state or the United States; (iii) any duly authorized law enforcement officer, agent or employee of any municipality of the commonwealth; (iv) any federal, state or local historical society, museum or institutional collection open to the public; provided, however, that any such person described in clauses (i) to (iii), inclusive, is authorized by a competent authority to acquire, possess or carry a large capacity semiautomatic weapon and is acting within the scope of his duties; or (v) any gunsmith duly licensed under the applicable federal law.

(n) Whoever violates paragraph (a) or paragraph (c), by means of a loaded firearm, loaded sawed off shotgun or loaded machine gun shall be further punished by imprisonment in the house of correction for not more than 2½ years, which sentence shall begin from and after the expiration of the sentence for the violation of paragraph (a) or paragraph (c).

(*o*) For purposes of this section, "loaded" shall mean that ammunition is contained in the weapon or within a feeding device attached thereto.

For purposes of this section, "ammunition" shall mean cartridges or cartridge cases, primers (igniter), bullets or propellant powder designed for use in any firearm, rifle or shotgun.

Amended by St.1935, c. 290; St.1936, c. 227, § 1; St.1937, c. 250, § 1; St.1955, c. 160; St.1956, c. 172; St.1957, c. 688, § 23; St.1968, c. 737, §§ 11 to 14; St.1969, c. 441; St.1969, c. 799, §§ 14 to 16; St.1971, c. 456, §§ 5, 6; St.1972, c. 312, § 5; St.1973, c. 588; St.1974, c. 649, § 2; St.1975, c. 113, §§ 2, 3; St.1975, c. 585, § 1; St.1978, c. 175, §§ 1, 2; St.1982, c. 254; St.1983, c. 516, §§ 2, 3; St.1985, c. 349; St.1986, c. 481, § 3; St.1986, c. 581, § 1; St.1987, c. 150, §§ 1, 2; St.1989, c. 648; St.1990, c. 511, §§ 2, 3; St.1996, c. 20; St.1996, c. 151, §§ 487, 488; St.1998, c. 180, §§ 68 to 70; St.2006, c. 48, §§ 5 to 7, eff. Mar. 30, 2006.

### Historical and Statutory Notes

| | | |
|---|---|---|
| St.1906, c. 172, § 2. | St.1911, c. 548, § 2. | St.1923, c. 248, § 1. |
| St.1908, c. 350. | St.1919, c. 207, § 2. | St.1925, c. 284, § 5. |
| St.1908, c. 583. | St.1919, c. 350, §§ 99, 100. | St.1927, c. 326, § 5. |

St.1935, c. 290, approved May 24, 1935, in the first sentence, deleted "or possesses a machine gun as defined in section one hundred and twenty-one of chapter one hundred and forty," following "unloaded", and "for not less than six months nor more than two and one half years in a jail or house of correction or" following "imprisonment", and inserted "or whoever, except as provided by law, possesses a machine gun as defined in section one hundred and twenty-one of chapter one hundred and forty, without permission under said chapter one hundred and thirty-one shall be punished by imprisonment in the state prison for life or for any term of years,".

St.1936, c. 227, § 1, an emergency act, approved April 18, 1936, in the first sentence, substituted "ten" for "five", and inserted "or for not more than two and one half years in a jail or house of correction except that, if the court finds that the defendant has not been previously convicted of a felony, he may be punished by a fine of not more than fifty dollars,".

St.1937, c. 250, § 1, approved April 29, 1937, in the first sentence, substituted "five years in the state prison or for not less than six months

wo sticks of wood,
ipe, chain, wire or
ntended to injure a
which has metallic
other substance or
ubstance and worn
n having weighted
ged crime, or when
ie public peace, is
der his control in a
ɔ herein mentioned
ɣ imprisonment for
years in the state
id one-half years in
that the defendant
inished by a fine of
than two and one-

ine gun, as defined
iundred and forty,
ine of said chapter
es on his person, or
ved-off shotgun, as
said chapter one
he state prison for
imposed under the
im requirements of

ffenses set forth in
ɔf the said offenses,
not less than five
iy imprisonment in
en years; and for a
r not less than ten
pon a person, who
ɔr (c) commits the
all any person so
from his sentence

rm or other article
d by the common-
ie authority of the
ɔ the colonel of the
id court or justice
t that any firearm

## CRIMES AGAINST PUBLIC PEACE 269 § 10

which may not be lawfully sold in the commonwealth shall be destroyed, and in
the case of a sale, after paying the cost of forwarding the article, shall pay over
the net proceeds to the commonwealth.

(f) The court shall, if the firearm or other article was lost by or stolen from
the person lawfully in possession of it, order its return to such person.

(g) Whoever, within this commonwealth, produces for sale, delivers or
causes to be delivered, orders for delivery, sells or offers for sale, or fails to
keep records regarding, any rifle or shotgun without complying with the
requirement of a serial number, as provided in section one hundred and
twenty-nine B of chapter one hundred and forty, shall for the first offense be
punished by confinement in a jail or house of correction for not more than two
and one-half years, or by a fine of not more than five hundred dollars.

(h)(1) Whoever owns, possesses or transfers a firearm, rifle, shotgun or
ammunition without complying with the provisions of section 129C of chapter
140 shall be punished by imprisonment in a jail or house of correction for not
more than 2 years or by a fine of not more than $500. Whoever commits a
second or subsequent violation of this paragraph shall be punished by impris-
onment in a house of correction for not more than 2 years or by a fine of not
more than $1,000, or both. Any officer authorized to make arrests may arrest
without a warrant any person whom the officer has probable cause to believe
has violated this paragraph.

(2) Any person who leaves a firearm, rifle, shotgun or ammunition unattend-
ed with the intent to transfer possession of such firearm, rifle, shotgun or
ammunition to any person not licensed under section 129C of chapter 140 or
section 131 of chapter 140 for the purpose of committing a crime or concealing
a crime shall be punished by imprisonment in a house of correction for not
more than 2½ years or in state prison for not more than 5 years.

(i) Whoever knowingly fails to deliver or surrender a revoked or suspended
license to carry or possess firearms or machine guns issued under the provi-
sions of section one hundred and thirty-one or one hundred and thirty-one F of
chapter one hundred and forty, or firearm identification card, or receipt for the
fee for such card, or a firearm, rifle, shotgun or machine gun, as provided in
section one hundred and twenty-nine D of chapter one hundred and forty,
unless an appeal is pending, shall be punished by imprisonment in a jail or
house of correction for not more than two and one-half years or by a fine of not
more than one thousand dollars.

(j) Whoever, not being a law enforcement officer, and notwithstanding any
license obtained by him under the provisions of chapter one hundred and forty,
carries on his person a firearm as hereinafter defined, loaded or unloaded or
other dangerous weapon in any building or on the grounds of any elementary
or secondary school, college or university without the written authorization of
the board or officer in charge of such elementary or secondary school, college
or university shall be punished by a fine of not more than one thousand dollars
or by imprisonment for not more than one year, or both. For the purpose of

647

## § 120.   Repealed by St.1930, c. 399, § 3

### SALE OF FIREARMS

#### Cross References

Rules and regulations regarding firearms record information, see c. 6, § 168B.

### § 121.   Firearms sales; definitions; antique firearms; application of law; exceptions

As used in sections 122 to 131P, inclusive, the following words shall, unless the context clearly requires otherwise, have the following meanings:-

"Ammunition", cartridges or cartridge cases, primers (igniter), bullets or propellant powder designed for use in any firearm, rifle or shotgun. The term "ammunition" shall also mean tear gas cartridges, chemical mace or any device or instrument which contains or emits a liquid, gas, powder or any other substance designed to incapacitate.

"Assault weapon", shall have the same meaning as a semiautomatic assault weapon as defined in the federal Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. section 921(a)(30), and shall include, but not be limited to, any of the weapons, or copies or duplicates of the weapons, of any caliber, known as: (i) Avtomat Kalashnikov (AK) (all models); (ii) Action Arms Israeli Military Industries UZI and Galil; (iii) Beretta Ar70 (SC-70); (iv) Colt AR-15; (v) Fabrique National FN/FAL, FN/LAR and FNC; (vi) SWD M-10, M-11, M-11/9 and M-12; (vi) Steyr AUG; (vii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and (viii) revolving cylinder shotguns, such as, or similar to, the Street Sweeper and Striker 12; provided, however, that the term assault weapon shall not include: (i) any of the weapons, or replicas or duplicates of such weapons, specified in appendix A to 18 U.S.C. section 922, as such weapons were manufactured on October 1, 1993; (ii) any weapon that is operated by manual bolt, pump, lever or slide action; (iii) any weapon that has been rendered permanently inoperable or otherwise rendered permanently unable to be designated a semiautomatic assault weapon; (iv) any weapon that was manufactured prior to the year 1899; (v) any weapon that is an antique or relic, theatrical prop or other weapon that is not capable of firing a projectile and which is not intended for use as a functional weapon and cannot be readily modified through a combination of available parts into an operable assault weapon; (vi) any semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition; or (vii) any semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine.

"Conviction", a finding or verdict of guilt or a plea of guilty, whether or not final sentence is imposed.

"Firearm", a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured; provided, however, that the term firearm

3

ee c. 6, § 168B.

lrearms; application of law

following words shall, unless
lowing meanings:-

primers (igniter), bullets or
1, rifle or shotgun. The term
lges, chemical mace or any
uid, gas, powder or any other

g as a semiautomatic assault
id Recreational Firearms Use
id shall include, but not be
icates of the weapons, of any
(all models); (ii) Action Arms
rretta Ar70 (SC-70); (iv) Colt
and FNC; (vi) SWD M-10,
RATEC TEC-9, TEC-DC9 and
ch as, or similar to, the Street
the term assault weapon shall
· duplicates of such weapons,
)22, as such weapons were
n that is operated by manual
pon that has been rendered
:manently unable to be desig-
eapon that was manufactured
n antique or relic, theatrical
a projectile and which is not
cannot be readily modified
)perable assault weapon; (vi)
achable magazine that holds
y semiautomatic shotgun that
ion in a fixed or detachable

3lea of guilty, whether or not

of any description, loaded or
lischarged and of which the
s or 18 inches in the case of a
)wever, that the term firearm

all not include any weapon that is: (i) constructed in a shape that does not
semble a handgun, short-barreled rifle or short-barreled shotgun including,
it not limited to, covert weapons that resemble key-chains, pens, cigarette-
ghters or cigarette-packages; or (ii) not detectable as a weapon or potential
eapon by x-ray machines commonly used at airports or walk- through metal
etectors.

"Gunsmith", any person who engages in the business of repairing, altering,
eaning, polishing, engraving, blueing or performing any mechanical operation
any firearm, rifle, shotgun or machine gun.

"Imitation firearm", any weapon which is designed, manufactured or altered
such a way as to render it incapable of discharging a shot or bullet.

"Large capacity feeding device", (i) a fixed or detachable magazine, box,
drum, feed strip or similar device capable of accepting, or that can be readily
onverted to accept, more than ten rounds of ammunition or more than five
hotgun shells; or (ii) a large capacity ammunition feeding device as defined in
he federal Public Safety and Recreational Firearms Use Protection Act, 18
.S.C. section 921(a)(31). The term "large capacity feeding device" shall not
nclude an attached tubular device designed to accept, and capable of operating
only with, .22 caliber ammunition.

"Large capacity weapon", any firearm, rifle or shotgun: (i) that is semiauto-
matic with a fixed large capacity feeding device; (ii) that is semiautomatic and
capable of accepting, or readily modifiable to accept, any detachable large
capacity feeding device; (iii) that employs a rotating cylinder capable of
accepting more than ten rounds of ammunition in a rifle or firearm and more
than five shotgun shells in the case of a shotgun or firearm; or (iv) that is an
assault weapon. The term "large capacity weapon" shall be a secondary
designation and shall apply to a weapon in addition to its primary designation
as a firearm, rifle or shotgun and shall not include: (i) any weapon that was
manufactured in or prior to the year 1899; (ii) any weapon that operates by
manual bolt, pump, lever or slide action; (iii) any weapon that is a single-shot
weapon; (iv) any weapon that has been modified so as to render it permanently
inoperable or otherwise rendered permanently unable to be designated a large
capacity weapon; or (v) any weapon that is an antique or relic, theatrical prop
or other weapon that is not capable of firing a projectile and which is not
intended for use as a functional weapon and cannot be readily modified
through a combination of available parts into an operable large capacity
weapon.

"Length of barrel" or "barrel length", that portion of a firearm, rifle, shotgun
or machine gun through which a shot or bullet is driven, guided or stabilized
and shall include the chamber.

"Licensing authority", the chief of police or the board or officer having
control of the police in a city or town, or persons authorized by them.

"Machine gun", a weapon of any description, by whatever name known,
loaded or unloaded, from which a number of shots or bullets may be rapidly or

automatically discharged by one continuous activation of the trigger, including a submachine gun.

"Purchase" and "sale" shall include exchange; the word "purchaser" shall include exchanger; and the verbs "sell" and "purchase", in their different forms and tenses, shall include the verb exchange in its appropriate form and tense.

"Rifle", a weapon having a rifled bore with a barrel length equal to or greater than 16 inches and capable of discharging a shot or bullet for each pull of the trigger.

"Sawed-off shotgun", any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon as modified has one or more barrels less than 18 inches in length or as modified has an overall length of less than 26 inches.

"Semiautomatic", capable of utilizing a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and requiring a separate pull of the trigger to fire each cartridge.

"Shotgun", a weapon having a smooth bore with a barrel length equal to or greater than 18 inches with an overall length equal to or greater than 26 inches, and capable of discharging a shot or bullet for each pull of the trigger.

"Violent crime", shall mean any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or possession of a deadly weapon that would be punishable by imprisonment for such term if committed by an adult, that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another.

"Weapon", any rifle, shotgun or firearm.

Where the local licensing authority has the power to issue licenses or cards under this chapter, but no such licensing authority exists, any resident or applicant may apply for such license or firearm identification card directly to the colonel of state police and said colonel shall for this purpose be the licensing authority.

The provisions of sections 122 to 129D, inclusive, and sections 131, 131A, 131B and 131E shall not apply to:

(A) any firearm, rifle or shotgun manufactured in or prior to the year 1899;

(B) any replica of any firearm, rifle or shotgun described in clause (A) if such replica: (i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition; or (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade; and

228

on of the trigger, including

he word "purchaser" shall
irchase", in their different
in its appropriate form and

barrel length equal to o
. shot or bullet for each pul

shotgun, whether by altera
modified has one or more
has an overall length of less

1 of the energy of a firing
iamber the next round, and
:artridge.

1 a barrel length equal to o
qual to or greater than 26
for each pull of the trigger

ible by imprisonment for a
nquency involving the use of
ishable by imprisonment for
ias as an element the use
or a deadly weapon against
, arson or kidnapping; (ii)
olves conduct that presents

'er to issue licenses or cards
rity exists, any resident of
lentification card directly to
all for this purpose be the

ive, and sections 131, 131A

in or prior to the year 1899

lescribed in clause (A) if such
sing rimfire or conventional
e or conventional centerfire
red in the United States and
iannels of commercial trade

(C) manufacturers or wholesalers of firearms, rifles, shotguns or machine guns.

Amended by St.1934, c. 359, § 1; St.1957, c. 688, § 4; St.1959, c. 296, § 1; St.1960, c. 186; St.1968, c. 737, § 1; St.1969, c. 799, § 1; St.1971, c. 456, § 1; St.1973, c. 892, § 1; St.1983, c. 516, § 1; St.1984, c. 116, § 1; St.1989, c. 433; St.1990, c. 511, § 1; St.1996, c. 151, §§ 300, 301; St.1998, c. 180, § 8; St.1999, c. 1, § 1.

**Historical and Statutory Notes**

St.1911, c. 495, §§ 1, 11.
St.1922, c. 485, § 1.
St.1927, c. 326, § 1.

St.1934, c. 359, § 1, approved June 29, 1934, in the first sentence, substituted "is less than eighteen" for "does not exceed twelve" and in the third and fourth sentences, inserted ", and section ten B of chapter two hundred and sixty-nine".

St.1957, c. 688, § 4, approved Aug. 21, 1957, rewrote the section, which prior thereto read:

"In sections one hundred and twenty-two to one hundred and twenty-nine, inclusive, 'firearms' includes a pistol, revolver or other weapon of any description loaded or unloaded, from which a shot or bullet can be discharged and of which the length of barrel, not including any revolving, detachable or magazine breech, is less than eighteen inches, and a machine gun, irrespective of the length of the barrel. Any gun of small arm calibre designed for rapid fire and operated by a mechanism, or any gun which operates automatically after the first shot has been fired, either by gas action or recoil action, shall be deemed to be a machine gun for the purposes of said sections, and of sections one hundred and thirty-one and one hundred and thirty-one B. As used in this section and in sections one hundred and twenty-two to one hundred and thirty-one-A, and section ten B of chapter two hundred and sixty-nine, the words 'purchase' and 'sale' shall include exchange, the word 'purchaser' shall include exchanger, and the verbs 'sell' and 'purchase', in their different forms and tenses, shall include the verb exchange in its appropriate form and tense. Said sections one hundred and twenty-two to one hundred and twenty-nine, inclusive, and section ten B of chapter two hundred and sixty-nine, shall not apply to antique firearms incapable of use as firearms nor to sales of firearms at wholesale."

St.1959, c. 296, § 1, approved May 11, 1959, inserted the fourth sentence.

St.1960, c. 186, approved March 11, 1960, in the first sentence, substituted " 'firearm' shall mean" for " 'firearms' includes".

St.1968, c. 737, § 1, approved July 20, 1968, rewrote the last sentence, which prior thereto read, "Sections one hundred and twenty-two to

one hundred and twenty-nine, inclusive, and section one hundred and thirty-one-A, shall not apply to matchlock, wheellock, flintlock, percussion, and other types of antique firearms, made or manufactured prior to eighteen hundred and seventy, nor to manufacturers or wholesalers of firearms, rifles, shotguns or machine guns."

St.1969, c. 799, § 1, approved Aug. 24, 1969, in the first paragraph, in the first sentence, substituted "sixteen inches or eighteen inches in the case of a shotgun" for "eighteen inches" and rewrote the last sentence, which prior thereto read, "Sections one hundred and twenty-two to one hundred and twenty-nine, inclusive, and section one hundred and thirty-one A shall not apply to any firearm made prior to eighteen hundred and ninety-seven, including matchlock, flintlock, percussion cap or similar early type ignition system or a replica thereof, whether actually made before or after the year eighteen hundred and ninety-seven, and also any firearm using fixed ammunition made prior to eighteen hundred and ninety-eight, for which ammunition is no longer made in the United States and is not readily available in the ordinary channels of commercial trade."; and added the second and third paragraphs.

St.1971, c. 456, § 1, approved June 29, 1971, in the first paragraph, in the first sentence, deleted ", not including any revolving, detachable or magazine breech," following "barrel" and added ", and the term 'length of barrel' shall mean that portion of a firearm, rifle, shotgun or machine gun through which a shot or bullet is driven, guided or stabilized, and shall include the chamber".

St.1973, c. 892, § 1, approved Oct. 9, 1973, in the first paragraph, in the second (now fifth) sentence, substituted "activation" for "pull" and inserted the third and fourth (now sixth and seventh) sentences.

St.1983, c. 516, § 1, approved Nov. 23, 1983, in the first paragraph, in the first sentence, inserted "or barrels" and "as originally manufactured" and inserted the second (now fourth) sentence.

229

struction of property, or of injury thereto, and in a manner to give firm and courageous persons in the neighborhood reasonable grounds to apprehend a breach of the peace. Yalenezian v. City of Boston (1921) 131 N.E. 220, 238 Mass. 538. Municipal Corporations ⊕ 740(1)

**6. —— Diligence of owner, nature and elements of offense**

Where plaintiff claimed defendant city liable in tort for injury to his property caused by persons riotously assembled, but the declaration contained no count under R.L.1902, c. 211, § 8, allowing a recovery by a city in an action for tort for property of the value of $50 or more destroyed by 12 or more persons riotously or tumultuously assembled, if the owner used all reasonable diligence to prevent its destruction, it was proper to order a verdict for defendant.

Hathaway v. City of Everett (1910) 91 N.E. 296, 205 Mass. 246. Municipal Corporations ⊕ 742(4)

**7. Instructions**

Instructions that those assembled must have intended to help one another by force if necessary against any person who should oppose them in execution of their common purpose and those assembled must not only have used force or violence in demolishing and destroying plaintiff's bowling alley but must have displayed such force or violence in such manner as to have alarmed at least one person of reasonable firmness and courage were properly refused in action to hold city liable in tort for the alleged riot damage. Abraham v. City of Woburn (1981) 421 N.E.2d 1206, 383 Mass. 724. Municipal Corporations ⊕ 742(6)

## § 9.   Repealed, 1923, 248, Sec. 2

## § 10.   Carrying dangerous weapons; possession of machine gun or sawed-off shotguns; possession of large capacity weapon or large capacity feeding device; punishment

(a) Whoever, except as provided or exempted by statute, knowingly has in his possession; or knowingly has under his control in a vehicle; a firearm, loaded or unloaded, as defined in section one hundred and twenty-one of chapter one hundred and forty without either:

(1) being present in or on his residence or place of business; or

(2) having in effect a license to carry firearms issued under section one hundred and thirty-one of chapter one hundred and forty; or

(3) having in effect a license to carry firearms issued under section one hundred and thirty-one F of chapter one hundred and forty; or

(4) having complied with the provisions of sections one hundred and twenty-nine C and one hundred and thirty-one G of chapter one hundred and forty; or

(5) having complied as to possession of an air rifle or BB gun with the requirements imposed by section twelve B; and whoever knowingly has in his possession; or knowingly has under control in a vehicle; a rifle or shotgun, loaded or unloaded, without either:

(1) being present in or on his residence or place of business; or

(2) having in effect a license to carry firearms issued under section one hundred and thirty-one of chapter one hundred and forty; or

(3) having in effect a license to carry firearms issued under section one hundred and thirty-one F of chapter one hundred and forty; or

(4) having in effect a firearms identification card issued under section one hundred and twenty-nine B of chapter one hundred and forty; or

Everett (1910) 91 N.E. 296,
Municipal Corporations

those assembled must have
ne another by force if neces-
person who should oppose
of their common purpose and
nust not only have used force
nolishing and destroying plain-
· but must have displayed such
in such manner as to have
one person of reasonable firm-
: were properly refused in ac-
iable in tort for the alleged riot
am v. City of Woburn (1981)
6, 383 Mass. 724. Municipal
742(6)

machine gun or sawed-off
veapon or large capacity

atute, knowingly has in his
vehicle; a firearm, loaded
twenty-one of chapter one

: business; or
  issued under section one
forty; or
  issued under section one
nd forty; or

ns one hundred and twenty-
oter one hundred and forty;

r rifle or BB gun with the
/hoever knowingly has in his
vehicle; a rifle or shotgun,

of business; or
ns issued under section one
id forty; or
ns issued under section one
i and forty; or

:ard issued under section one
:ed and forty; or

(5) having complied with the requirements imposed by section one hundred and twenty-nine C of chapter one hundred and forty upon ownership or possession of rifles and shotguns; or

(6) having complied as to possession of an air rifle or BB gun with the requirements imposed by section twelve B; shall be punished by imprisonment in the state prison for not less than two and one-half years nor more than five years, or for not less than 18 months nor more than two and one-half years in a jail or house of correction. The sentence imposed on such person shall not be reduced to less than 18 months, nor suspended, nor shall any person convicted under this subsection be eligible for probation, parole, work release, or furlough or receive any deduction from his sentence for good conduct until he shall have served 18 months of such sentence; provided, however, that the commissioner of correction may on the recommendation of the warden, superintendent, or other person in charge of a correctional institution, grant to an offender committed under this subsection a temporary release in the custody of an officer of such institution for the following purposes only: to attend the funeral of a relative; to visit a critically ill relative; or to obtain emergency medical or psychiatric service unavailable at said institution. Prosecutions commenced under this subsection shall neither be continued without a finding nor placed on file.

No person having in effect a license to carry firearms for any purpose, issued under section one hundred and thirty-one or section one hundred and thirty-one F of chapter one hundred and forty shall be deemed to be in violation of this section.

The provisions of section eighty-seven of chapter two hundred and seventy-six shall not apply to any person seventeen years of age or older, charged with a violation of this subsection, or to any child between ages fourteen and seventeen so charged, if the court is of the opinion that the interests of the public require that he should be tried as an adult for such offense instead of being dealt with as a child.

The provisions of this subsection shall not affect the licensing requirements of section one hundred and twenty-nine C of chapter one hundred and forty which require every person not otherwise duly licensed or exempted to have been issued a firearms identification card in order to possess a firearm, rifle or shotgun in his residence or place of business.

(b) Whoever, except as provided by law, carries on his person, or carries on his person or under his control in a vehicle, any stiletto, dagger or a device or case which enables a knife with a locking blade to be drawn at a locked position, any ballistic knife, or any knife with a detachable blade capable of being propelled by any mechanism, dirk knife, any knife having a double-edged blade, or a switch knife, or any knife having an automatic spring release device by which the blade is released from the handle, having a blade of over one and one-half inches, or a slung shot, blowgun, blackjack, metallic knuckles or knuckles of any substance which could be put to the same use with the same or similar effect as metallic knuckles, nunchaku, zoobow, also known as klackers

John Cassidy, Plaintiff

Case #_____

v.

Maura Healey, Attorney General For the State of Massachusetts

Jury Trial - No

Plaintiff's Law School Loan Ledger

 

**Account Summary for John Cassidy**

Prepared on May 30, 2018

| Account | Loan | Loan Program and Type* | Subsidy | Principal Balance | Accrued Interest | Fees | Outstanding Balance |
|---------|------|------------------------|---------|-------------------|------------------|------|---------------------|
| E825968392 | 1 | Direct Grad Plus Loans | Unsubsized | $34,047.20 | $7,937.59 | $0.00 | $41,984.79 |
| E825968392 | 2 | Direct Stafford Loans | Subsidized | $8,715.42 | $1,823.38 | $0.00 | $10,538.80 |
| E825968392 | 3 | Direct Stafford Loans | Unsubsized | $13,956.73 | $2,982.74 | $0.00 | $16,939.47 |

*FFELP denotes loans disbursed under the Federal Family Education Loan Program
*Direct denotes loans disbursed by the Department of Education under the Direct Loan Program

69,463.0

**Payments Made to Account E825968392**

| Effective Date | Transaction | Amount | Applied Principal | Applied Interest | Applied Fees |
|----------------|-------------|--------|-------------------|------------------|--------------|
| 01/10/2012 | BORROWER PAYMENT | $700.00 | $95.02 | $604.98 | $0.00 |
| 03/15/2013 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 04/03/2013 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 05/15/2013 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 06/15/2013 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 07/15/2013 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 08/15/2013 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 09/15/2013 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 10/15/2013 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 11/15/2013 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 12/15/2013 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 01/15/2014 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 02/15/2014 | BORROWER PAYMENT | $39.35 | $0.00 | $39.35 | $0.00 |
| 03/15/2014 | BORROWER PAYMENT | $684.91 | $148.33 | $536.58 | $0.00 |
| 04/15/2014 | BORROWER PAYMENT | $684.91 | $259.34 | $425.57 | $0.00 |
| 05/15/2014 | BORROWER PAYMENT | $684.91 | $325.39 | $359.52 | $0.00 |
| 06/15/2014 | BORROWER PAYMENT | $684.91 | $315.38 | $369.53 | $0.00 |
| 09/15/2014 | BORROWER PAYMENT | $684.91 | $0.00 | $684.91 | $0.00 |
| 10/15/2014 | BORROWER PAYMENT | $250.08 | $0.00 | $250.08 | $0.00 |
| 11/15/2014 | BORROWER PAYMENT | $250.08 | $0.00 | $250.08 | $0.00 |
| 12/05/2014 | BORROWER PAYMENT | $1,750.08 | $894.63 | $855.45 | $0.00 |
| 01/15/2015 | BORROWER PAYMENT | $250.08 | $0.00 | $250.08 | $0.00 |
| 02/15/2015 | BORROWER PAYMENT | $250.08 | $0.00 | $250.08 | $0.00 |
| 03/15/2015 | BORROWER PAYMENT | $250.08 | $0.00 | $250.08 | $0.00 |
| 04/14/2015 | BORROWER PAYMENT | $250.08 | $0.00 | $250.08 | $0.00 |
| 04/15/2015 | BORROWER PAYMENT | $250.08 | $26.05 | $224.03 | $0.00 |
| 06/15/2015 | BORROWER PAYMENT | $3,000.00 | $2,303.85 | $696.15 | $0.00 |
| | Sum: | $11,097.39 | $4,367.99 | $6,729.40 | $0.00 |

John Cassidy, Plaintiff                                            Case #_____

v.

Maura Healey, Attorney General For the State of Massachusetts                    Jury Trial - No

Plaintiff's (3) pay stubs

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | 030 |
| --- | --- | --- | --- | --- | --- |
| T45 | 001285 | EFRM00 | | 0000030019 | 1 |

# Earnings Statement

DIVERSE ENERGY SYSTEMS LLC
1023 W. 9TH STREET
GRAFTON, ND 58237

| Period Beginning: | 12/28/2014 |
| --- | --- |
| Period Ending: | 01/10/2015 |
| Pay Date: | 01/16/2015 |

Taxable Marital Status:   Single
Exemptions/Allowances:
   Federal:       2
   TX:              No State Income Tax

00000000019
**JOHN E CASSIDY**
**5380 MEDICAL DRIVE #1406**
**SAN ANTONIO TX 78240**

| Earnings | rate | hours | this period | year to date |
| --- | --- | --- | --- | --- |
| Regular | 27.0000 | 76.50 | 2,065.50 | 4,225.50 |
| Overtime | 40.5000 | 20.50 | 830.25 | 1,316.25 |
| Holiday | 27.0000 | 8.00 | 216.00 | 432.00 |
| Phone Allow | | | | 46.15 | 92.30 |
| | **Gross Pay** | | **$3,157.90** | 6,066.05 |

| Other Benefits and Information | this period | total to da |
| --- | --- | --- |
| Group Term Life | 2.28 | 4. |
| Max Elig/Comp | 3,111.75 | 5,973. |

| Deductions | Statutory | | |
| --- | --- | --- | --- |
| | Federal Income Tax | -513.12 | 979.92 |
| | Social Security Tax | -191.93 | 372.38 |
| | Medicare Tax | -44.89 | 87.09 |
| | **Other** | | |
| | Dental Ins | -23.72* | 23.72 |
| | Medical Insuran | -34.40* | 34.40 |
| | Vision Insur | -6.34* | 6.34 |
| | **Net Pay** | **$2,343.50** | |
| | Direct Dep Chk1 | -2,343.50 | |
| | **Net Check** | **$0.00** | |

\* **Excluded from federal taxable wages**

Your federal taxable wages this period are
$3,095.72

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA ...

DIVERSE ENERGY SYSTEMS LLC
1023 W. 9TH STREET
GRAFTON, ND 58237

Advice number:        00000030019
Pay date:                  01/16/2015



Deposited to the account of
**JOHN E CASSIDY**

| account number | transit ABA | amo |
| --- | --- | --- |
| xxxxx0739 | xxxx  xxxx | $2,34: |

# NON-NEGOTIABLE

**T45**   001285 EFRM00    0000050019  1

## Earnings Statement



*DIVERSE ENERGY SYSTEMS LLC*
*1023 W. 9TH STREET*
*GRAFTON, ND 58237*

| Period Beginning: | 01/11/2015 |
|---|---|
| Period Ending: | 01/24/2015 |
| Pay Date: | 01/30/2015 |

00000000019
**JOHN E CASSIDY**
**5380 MEDICAL DRIVE #1406**
**SAN ANTONIO TX 78240**

Taxable Marital Status:  Single
Exemptions/Allowances:
Federal:    2
TX:    No State Income Tax

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 27.0000 | 80.00 | 2,160.00 | 6,385.50 |
| Overtime | 40.5000 | 26.75 | 1,083.38 | 2,399.63 |
| Phone Allow | | | 46.15 | 138.45 |
| Holiday | | | | 432.00 |
| **Gross Pay** | | | **$3,289.53** | 9,355.58 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Group Term Life | 2.28 | 6.84 |
| Max Elig/Comp | 3,243.38 | 9,217.13 |

**Deductions**

**Statutory**

| | this period | year to date |
|---|---|---|
| Federal Income Tax | -562.14 | 1,542.06 |
| Social Security Tax | -204.09 | 576.47 |
| Medicare Tax | -47.73 | 134.82 |

**Other**

| | | |
|---|---|---|
| Dental Ins | | 23.72 |
| Medical Insuran | | 34.40 |
| Vision Insur | | 6.34 |

| **Net Pay** | **$2,475.57** |
|---|---|
| Direct Dep Chk1 | -2,475.57 |
| **Net Check** | **$0.00** |

Your federal taxable wages this period are
$3,291.81

VIEW BY DOCUMENT ADTHENTICITY A COLORED AREA. ADDITIONAL CLEAR TO LEFT INDICATOR IS BALANCED SCALE. EVALUATE SECURITY.



DIVERSE ENERGY SYSTEMS LLC
1023 W. 9TH STREET
GRAFTON, ND 58237

| Advice number: | 00000050019 |
|---|---|
| Pay date: | 01/30/2015 |

| Deposited to the account of | account number | transit ABA | amount |
|---|---|---|---|
| **JOHN E CASSIDY** | xxxxx0739 | XXXX XXXX | $2,475.57 |

## NON-NEGOTIABLE

**Earnings Statement**



T45   001285 EFRM00      0000070019   1

*DIVERSE ENERGY SYSTEMS LLC*
*1023 W. 9TH STREET*
*GRAFTON, ND 58237*

| Period Beginning: | 01/25/2015 |
| Period Ending: | 02/07/2015 |
| Pay Date: | 02/13/2015 |

Taxable Marital Status:   Single
Exemptions/Allowances:
   Federal:    2
   TX:    No State Income Tax

00000000019
**JOHN E CASSIDY**
**5380 MEDICAL DRIVE #1406**
**SAN ANTONIO TX 78240**

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 27.0000 | 80.00 | 2,160.00 | 8,545.50 |
| Overtime | 40.5000 | 20.00 | 810.00 | 3,209.63 |
| Phone Allow | | | 46.15 | 184.60 |
| Holiday | | | | 432.00 |
| **Gross Pay** | | | **$3,016.15** | 12,371.73 |

| Other Benefits and Information | this period | total to dat |
|---|---|---|
| Group Term Life | 2.28 | 9.1 |
| Max Elig:Comp | 2,970.00 | 12,187.1 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -485.74 | 2,027.80 |
| | Social Security Tax | -185.15 | 761.62 |
| | Medicare Tax | -43.30 | 178.12 |
| | **Other** | | |
| | Dental Ins | -11.86* | 35.58 |
| | Medical Insuran | -17.20* | 51.60 |
| | Vision Insur | -3.17* | 9.51 |
| | **Net Pay** | **$2,269.73** | |
| | Direct Dep Chk1 | -2,269.73 | |
| | **Net Check** | **$0.00** | |

* **Excluded from federal taxable wages**

Your federal taxable wages this period are
$2,986.20

≡

ADP PAYOLL...

DIVERSE ENERGY SYSTEMS LLC
1023 W. 9TH STREET
GRAFTON, ND 58237

| Advice number: | 00000070019 |
| Pay date: | 02/13/2015 |

| Deposited to the account of | account number | transit ABA | amount |
|---|---|---|---|
| **JOHN E CASSIDY** | xxxxx0739 | XXXX  XXXX | $2,269.73 |

THIS IS NOT A CHECK

**NON-NEGOTIABLE**